## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 1:13CR016 |
| JAMES NAPIER, | : | Chief Judge Dlott |
| Defendant. | : | |

### SENTENCING MEMORANDUM OF DEFENDANT JAMES NAPIER

Now comes the Defendant, James Napier, by and through counsel, and hereby submits his sentencing memorandum for the Court's consideration in sentencing.  Mr. Napier submits that, pursuant to United States v. Booker, 125 S. Ct. 738 (2005), and 18 U.S.C. § 3553(a), a sentence below the recommended guideline range is appropriate under the circumstances of this case.  Section 3553(a) requires that the Court consider certain factors in determining an appropriate sentence.  The factors are discussed below.

1. **The nature and circumstances of the offense, and defendant's history and characteristics**

Mr. Napier is 40 years old and suffers from Type I Diabetes.  Mr. Napier has for years suffered from black outs due to the severity of his problems managing his illness.  Mr. Napier's mother was fifteen years old at the time of his birth.  His mother and father divorced when he was 2 years old, and his father was never involved in his life thereafter.  Mr. Napier spent most of his childhood years with his mother living off of food stamps and welfare.  The male role model who was around the home was Mr. Napier's half-sister's father who was physically and emotionally abusive to Mr. Napier's mother.  Mr. Napier was forced to witness this abuse from a young age.

When Mr. Napier reached age five, he was repeatedly sexually abused by an older cousin who also lived in the family home.  This abuse went on through age ten, when the cousin moved out of the house.  The abuse involved both oral and anal penetration by the perpetrator on a very frequent basis.  Due to his tender years, Mr. Napier was terrified to tell anyone about the ongoing abuse.  Unbeknowst to Mr. Napier, the family apparently knew that the abuse was occurring because, according to Mr. Napier's brother, it was "talked about" a lot among family members.  Unfortunately, no one in the family took the initiative to put a stop to the horrible abuse, and it went on for half a decade during a very critical time in Mr. Napier's formative years.   As a result, it remained hidden and Mr. Napier never received any form of counseling or treatment to deal with the abuse.

Mr. Napier obviously felt the devastation of the trauma from his childhood as he moved into adulthood and had a difficult time with adjustment.  Mr. Napier tried to bury his problems in drug and alcohol use during his early adolescence and into young adulthood.  He ended up with petty convictions for theft, drug use, disorderly conduct, and soliciting prostitution.  He also fathered numerous children with various women. This type of conduct subsided in Mr. Napier's late 20's/early 30's.  Mr. Napier spent many years working and trying to be productive.  He worked good jobs at JTM Foods and Springdot and received positive employment reports.  Nonetheless, Mr. Napier's suppressed problems eventually caught up with him.

As with many child pornography offenders who appear before this Court, the horrible pattern of hidden and untreated abuse from childhood plays itself out in adulthood.  The boy victim becomes the adult perpetrator.  The current systemic, guideline-driven answer appears to be incarcerate for life with no possibility of parole, regardless of any potential for rehabilitation.

This is the recommendation from the Sentencing Commission and the probation department for Mr. Napier. This is not a fair result in this case given Mr. Napier's history and characteristics.

2. **The kinds of sentences available**

Counts one through nine of the indictment are charged under 18 U.S.C. § 2251, and carry a mandatory minimum sentence of 15 years in prison, and up to a maximum of 30 years. Counts 10-12 are charged under 18 U.S.C. § 2252(a)(2) and carry no mandatory minimum sentence, and up to a maximum of 20 years. Thus, the Court may sentence Mr. Napier to as low as 15 years imprisonment. After Booker, the sentencing guidelines are no longer mandatory, so the Court may choose to impose any sentence within the statutory parameters.

3. **The sentencing range established by the Sentencing Commission and any policy statements**.

The probation department has calculated the guideline range in this case to be "Life." This range was based on Mr. Napier's convictions for production, transportation, distribution, and receipt of child pornography. Mr. Napier was offered no plea option in this case that would have called for less than the remainder of his life in prison. As a result, the case proceeded to trial.

4. **The need for the sentence imposed to promote certain objectives**

Section 3553(a)(2) requires consideration of several objectives when imposing a sentence: (a) the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) the need to deter criminal conduct adequately; (c) the need to protect the public from further crimes; and (d) the need to provide defendant with treatment or training in the most effective manner.

Mr. Napier submits that a sentence of 40 years imprisonment is appropriate in this case. This sentence would take into account the seriousness of the crimes, provide adequate

punishment, protect the public from future crimes, and provide sufficient opportunity for Mr. Napier to rehabilitate.

Mr. Napier is 40 years old currently and suffers from Type I Diabetes. According to a study concluded in 2012, the average life expectancy of a person with Type 1 Diabetes is reduced by "over 20 years" from a normal healthy adult. Dr. Orchard, Aaron M. Secrest, Ph.D.; Ravi K. Sharma, Ph.D.; and Thomas J. Songer, Ph.D., University of Pittsburgh: <u>Life Expectancy Increasing for Type 1 Diabetics, According to Latest Pitt Research</u>, August 10, 2012 (reported in Diabetes UK at http://www.diabetes.co.uk/diabetes-life-expectancy.html). As a result, the life expectancy for a Type I Diabetes patient is approximately 69 years. <u>Id</u>.

Given Mr. Napier's age, a forty year sentence would in all likelihood outlast his life, especially given that his life expectancy would be reduced further by the fact that he is in prison. In fact, the average life expectancy for healthy federal inmates is 64 years, and the Sentencing Commission has accordingly defined a life sentence for the average 25 year old male defendant to be 470 months (39.17 years). See <u>Michigan Life Expectancy Data for Youth Serving Natural Life Sentences</u>, Deborah LaBelle, ACLU of Michigan Juvenile Life Without Parole Initiative (available at http://fairsentencingofyouth.org/wp-content/uploads/2010/02/Michigan-Life-Expectancy-Data-Youth-Serving-Life.pdf)(citing <u>United States v. Nelson</u>, 491 F.3d 344, 349-50 (7th Cir. 2012)). Mr. Napier is significantly older than the average defendant (40 years old versus 25 years old) and his health issues will greatly reduce his life expectancy. Accordingly, it is clear that the requested sentence of 40 years, which is just over the Sentencing Commission's definition of a life sentence for a 25 year old male, is in fact a life sentence.

Thus, the requested 40 year sentence is, in practical effect, no different in result from the 240 year sentence recommended in the PSR. The 40 year sentence, however, is sufficient but not greater than necessary to meet the statutory factors listed above.

A 40 year sentence is an extremely long sentence. It is difficult to argue that 40 years is not a severe punishment. This is particularly true when taken in the context of Mr. Napier's physical health and life expectancy. Thus, 40 years clearly satisfies the need to provide adequate punishment for the offense.

A 40 year sentence also sufficiently serves the need to deter criminal conduct. When other potential child pornographers see that a defendant can get 40 years in prison for this type of conduct, this will have a firm deterrent impact. Given the life expectancy of a healthy federal inmate to be age 64, any would-be child pornographer who is 24 years old or older would perceive that committing this type of conduct will result in a life sentence in federal prison. Thus, the deterrent impact of a 40 year sentence is firm and clear.

Further, a 40 year sentence sufficiently protects the public from further crimes of Mr. Napier. This interest is predominantly served by the overwhelming evidence that Mr. Napier will not likely survive this sentence. Even if he does, a 40 year sentence on top of his age (40) would mean that he would not be released until near age 80. After 40 years of rehabilitation in the Bureau of Prisons and this advanced state of age, any concerns about public safety would undoubtedly be alleviated. Additionally, if it is determined at the end of the 40 year sentence that Mr. Napier is "sexually dangerous," he could be civilly committed pursuant to 18 U.S.C. § 4248(d).

The final statutory consideration is rehabilitation. Clearly, a 40 year sentence will afford Mr. Napier the opportunity to participate in every single rehabilitative program that the Bureau of

5

Prisons has to offer. In fact, he could probably complete every program many times over in 40 years. So the length of the sentence certainly satisfies this consideration.

There is an even more important consideration at play, however, in the question of providing effective rehabilitation, and that is hope. What is the incentive for an inmate to "rehabilitate" when he or she has no hope that there is anything beyond the prison walls? Although Mr. Napier is highly unlikely to outlive a 40 year sentence, it gives him a sliver of hope, a reason to work at rehabilitation, a reason to try to overcome the problems of his past.

The Court will recall that Mr. Napier was willing to plead guilty in return for a 40 year sentence, however, that offer was rejected by the government. As a result, the case proceeded to trial. Mr. Napier fully understood at the time and still understands that he will not likely outlive a 40 year sentence. But he also understands the seriousness of the criminal charges and the potential penalties that these charges carry. A 40 year sentence is the highest possible sentence that leaves Mr. Napier with any chance at all, as small as it may be, of outliving the sentence. The proposed 40 year sentence is sufficient to satisfy the statutory considerations of sentencing under § 3553 and is not greater than necessary.

As a final consideration, as detailed above, Mr. Napier himself is the victim of long term sex abuse. Mr. Napier was the child victim and now, like so many other former child victim/defendants who appear before this Court, his unresolved issues regarding his own abuse have turned him into the aggressor. The answer for these individuals seems to be to lock them up as long as possible to make sure they don't do it again. This approach lacks the compassion in understanding that Mr. Napier, and many others before him, were once the victims the law was sworn to protect.

Mr. Napier did not come into this life with much going for him: broken home, physically abusive father figure, poverty, and years of sex abuse. If ever there was a set up for a difficult life, this was it. Apparently, his family even knew that sex abuse was occurring in the home, but nothing was done. How can we ever know of the severe impact years of sex abuse could have had on Mr. Napier during the tender years of ages 5 to 10? Surely, the negative impact of this severe abuse, left untreated, would take its toll in one fashion or another. Given this history, 40 years imprisonment is a sufficient punishment for Mr. Napier's actions in this case.

5.  **Conclusion**

Based on the foregoing, Mr. Napier respectfully requests that the Court impose a sentence below the suggested guideline range, and sentence Mr. Napier to 40 years imprisonment.

Respectfully submitted,

STEVEN S. NOLDER
FEDERAL PUBLIC DEFENDER

*s/ Richard Smith-Monahan*
Richard Smith-Monahan (0065648)
First Assistant Federal Public Defender
250 E. 5th Street, Suite 350
Cincinnati, Ohio 45202
(513) 929-4834

Attorney for Defendant
James Napier

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon Christy Muncy, Assistant United States Attorney, via Electronic Case Filing, on this 22nd day of April, 2014.

*s/ Richard Smith-Monahan*
Richard Smith-Monahan