# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | CASE NO.:   1:13-cr-016 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | CHIEF JUDGE DLOTT |
| : | |
| JAMES NAPIER, : | |
| : | |
| Defendant. : | |

## UNITED STATES' SENTENCING MEMORANDUM

Comes now the United States of America, by and through Christy L. Muncy and Benjamin C. Glassman, Assistant United States Attorneys, and respectfully submits the following Sentencing Memorandum for the Court's consideration.

        Respectfully submitted,

        CARTER M. STEWART
        United States Attorney

        */s/Christy L. Muncy*
        CHRISTY L. MUNCY    (KY 88236)
        BENJAMIN C. GLASSMAN (0077466)
        Assistant United States Attorney
        Attorney for Plaintiff
        221 E. Fourth Street, Suite 400
        Cincinnati, Ohio 45202
        (513) 684-3711
        christy.muncy@usdoj.gov

## **MEMORANDUM**

## **THE INVESTIGATION AND OFFENSE CONDUCT[1]**

The investigation of James Napier ("Napier") began as many other on-line child pornography investigations do – by trading child pornography images and videos with individuals across the country and the world. Napier was identified by an undercover agent in Arizona, who identified Napier on a website known to cater to child pornographers. The agent, using a covert email address, sent Napier a message with a single word as its subject: "trade?" That single word email, to which Napier responded, would prove to be the door that, once opened, led law enforcement authorities to much more than expected.

During the email exchange with the undercover agent, Napier sent a child pornographic video with the message "i hope you have something good for me. i have plenty much more hardcore if you send me something good." *See* Government's Exhibits 8 and 9. Through open source searches of social media websites, the undercover agent was able to determine the person using the email address jonapier1992@gmail.com was likely in the Cincinnati, Ohio area and referred the matter to the Cincinnati Field Office of the Federal Bureau of Investigation (FBI) for further investigation.

After repeated efforts to identify a particular residence, local FBI agents were finally able to identify an apartment from which the jonapier1992 email account was logged into. However, when they responded for further investigation, they were advised by the apartment manager that

---

[1] The United States incorporates as reference the offense conduct as outlined in the Final Presentence Report (PSR) found in paragraphs 14-27. This section of the United States' Sentencing Memorandum is included as a summary of Napier's conduct.

Page **2** of **14**

the prior residents had moved. After being provided forwarding address information, agents interviewed L.S. (former girlfriend of Napier's and aunt of Victim 1). She advised agents that Napier and she lived together in an apartment on Sunset Ave. She told them he sometimes used her laptop computer and agreed to permit agents to examine it.

Less than two months later, the forensic examination was complete. During the exam, a computer forensic examiner discovered references to the jonapier1992 gmail account as well as the file name of the child pornographic video sent to the undercover agent. However, the most significant discovery was a series of thumbnail images which appeared to depict a female infant in a variety of sexually explicit poses. The child appeared to the examiner to be the same child in family photos found on L.S.'s computer. Agents showed L.S. sanitized versions of the sexually explicit images and she confirmed the child was her niece, Victim 1, who was less than one year old at the time the images were taken. She also informed agents that Napier babysat Victim 1 only one time to her recollection.

Agents also secured search warrants for the jonapier1992 gmail account, phones and SD cards recovered from Napier at the time of his arrest, and a computer Napier brought along with him when he moved in with Victim 2's mother, C.A. What agents discovered was shocking, to say the least. Napier had not only taken still images of Victim 1, he had produced a video. The video was over 4 minutes in length. It showed Napier placing his penis in the baby's mouth, near her vaginal and anal area, and ultimately ejaculating on her. Napier shared the video, as well as the still images, with others. *See* Government's Exhibits 42 through 53.

In addition to the images and video of Victim 1, Napier's email account also contained 19 videos of his sexual assault and rape of Victim 2, who was 9 years old at the time. Napier emailed

each of the videos to himself. He described Victim 2 as the "chubby 9yo" who he had "been having lots of fun" with. *See* Government's Exhibit 55. The 19 child pornographic videos Napier produced using Victim 2 depict a variety of sexually explicit conduct, ranging from Napier going into the child's room in the middle of the night to take close-up videos of her vagina, to the child performing oral sex on Napier, to the child being raped and sodomized by Napier. *See* Government's Exhibits 55-71.

Ultimately, law enforcement authorities were able to determine that Napier maintained a collection of over 1,300 images of child pornography and over 550 videos of child pornography. His collection was replete with images and videos of children less than 5 years of age being sexually abused or tortured for sexual gratification.

## SENTENCING ARGUMENT

### I. INTRODUCTION

During the course of and following Napier's jury trial, he left little doubt about his lack of remorse for his conduct. The United States does not fault him for exercising his constitutional right to a trial by jury. That is a right bestowed upon every American and one that is to be respected and protected. The United States does, however, condemn Napier for his sexually assaulting children. This Court observed Napier during the course of the jury trial. Napier displayed no emotion to any of the damning evidence presented against him. More troubling than his apparent lack of remorse to the evidence was his callous attitude during the testimony of two former girlfriends (one of whom is the mother to one of his children) and one of the minor victims. During the heart breaking testimony of each of these individuals, all of whom Napier has proclaimed to love at one point during his life, he sat still, emotionless. He did not appear

ashamed.  He did not appear concerned.  He appeared anything *but* remorseful.

The initial investigation of Napier identified him as an active and enthusiastic participant in a community of morally depraved individuals who trade child sex abuse images and videos to satisfy their sexual desires.  In that community he sought out "serious traders only" and scorned those who did not offer him what he wanted.  Ultimately, Napier's true conduct rose to the surface.  He was not only trading child pornographic images and videos with others, he was producing them.  In his email account, agents discovered the unimaginable world in which Napier lived and thrived - a world that included the rape of an infant, as well as a nine-year-old little girl.  One of his victims, due to her age, may never know the abuse she suffered.  The other will never forget.  His sentence should be no less than hers.

## II.     SENTENCING CALCULATION

### A.     Statutory Sentence

Napier was found guilty following a jury trial of nine counts of Production of Child Pornography (18 U.S.C. §2251(a)) and one count each of Transportation (18 U.S.C. §2252(a)(1)), Distribution and Receipt of Child Pornography (18 U.S.C. §2252(a)(2)).  Each count of Production of Child Pornography carries a potential penalty of not less than 15 years and up to 30 years.  Each of the remaining offenses carries a potential penalty of not less than 5 years and up to 30 years imprisonment.  For each offense Napier was found guilty of, he faces supervised release for not less than 5 years and up to Life, a potential fine of up to $250,000.00 and a $100 special assessment per count.

### B.     Sentencing Guidelines Calculation

In fashioning its sentence, this Court should first consider the applicable advisory

guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. The Probation Department concludes that Napier's total adjust offense level is 56 with a criminal history category of III. *See* Final PSR ¶¶35-70. However, pursuant to U.S.S.G. Chapter 5, Application Note 2, a total offense level greater than 43 is to be treated as an offense level of 43. *See* Sentencing Recommendation, p. 1 of Final PSR. Neither party lodged any formal objections to the Probation Department's calculation of the advisory sentencing guideline range. As such, the United States incorporates herein the sentencing guideline calculation as set forth in the Final PSR.

Based upon a Criminal History Category of III and a total offense level of 43*, Napier's advisory sentencing guideline term of imprisonment is life. However, because the statutory maximum on each count is less than the advisory guidelines range of life imprisonment, the aggregated statutory maximum sentence on each count becomes the advisory guideline range for each count, i.e., 30 years on each of Counts One through Nine and 20 years on each of Counts Ten through Twelve. *See* U.S.S.G. §5G1.1(a).

Furthermore, U.S.S.G. §5G1.2(d) provides that the statutory maximum sentence shall run consecutively "if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." The "total punishment" under the sentencing guidelines in this case calls for life imprisonment. Because the aggregated statutory maximum sentence is less than the total guidelines punishment of life imprisonment, the sentences for the multiple counts should be run

consecutively as to the advisory guideline sentence. *See United States v. Herrick*, 512 Fed.Appx.534, 539 (6th Cir. 2013) (unpublished) ("§5G1.2(d) permits the court to impose consecutive sentences where the statutory maximum is less than the total punishment, in this case life in prison."). Accordingly, it is the position of the United States that Napier's advisory guideline range is 3,960 months (i.e., 30+30+30+30+30+30+30+30+30+20+20+20=330 years).

The PSR recommends a sentence of 2,880 months, followed by lifetime supervised release. While the United States is of the position that there are no reasons to vary downward from the advisory guideline range (3,960 months), the United States does not oppose the sentencing recommendation contained within the PSR. A sentence called for by the Sentencing Guidelines, as well as the sentence recommended by the Probation Department (effectively a life sentence), would be reasonable under the circumstances in this case and meet the goals of 18 U.S.C. §3553(a).

### III. ANALYSIS OF 18 U.S.C. § 3553(a) FACTORS

The sentencing factors outlined by Congress support the imposition of the statutory maximum sentence available to the Court or, at a minimum, the sentence recommended in the PSR. Napier has proven himself to be the epitome of why such a sentence is not only contemplated, but recommended, by the guidelines. There is nothing extraordinary about Napier which would warrant any less of a sentence.

#### A. The kinds of sentences available, and the sentencing range.

Because the guideline range applicable to Napier's offense is found in Zone D of the Sentencing Table, the Sentencing Guidelines recommend only the imposition of a term of imprisonment. Indeed, by statute, this Honorable Court has no choice but to impose a term of

imprisonment due to the mandatory minimum sentences established by Congress. A lenient sentence is not recommended by the Probation Department, nor should leniency be entertained. As stated above, the sentencing range established by the advisory guidelines is 3,960 months.

### B. The nature and circumstances of the offense and the history and characteristics of the defendant.

The nature and circumstances of Napier's offenses are especially despicable and egregious given the tender age of one of his victims (Victim 1) and the repeated nature of his abuse of the other (Victim 2). This Honorable Court had the unfortunate task of sharing a front row seat with the petit jury and witnessed the vile world in which Napier thrived. Setting aside, for just a moment, the videos Napier actually produced, his eager participation to view, request and distribute images and videos of violent child pornography depicting extraordinarily young children being molested – offenses which are characterized as crimes of violence in and of themselves – proved to be insufficient to satisfy his deviant sexual interests.

While Napier's criminal history does not include any sexual offenses against a child, he has an undeniable longstanding interest in the sexual abuse of young children. Napier's abuse of Victim 1 took place in 2009. He communicated with other child pornographers his desire to "get her alone" and to make her available to them. Victim 1 had not yet learned to walk when she was abused by Napier. Napier was involved romantically with Victim 1's aunt (L.S) during the time he abused her. During the duration of their relationship, Napier continued to proudly send the 4 minute video depicting Victim 1's abuse to other child pornographers. Napier kept the video up until his arrest in 2013.

Napier moved in with Victim 2's mother (C.A.) in the spring of 2012. Victim 2 was nine years old at the time. The earliest known video depicting Napier's abuse of Victim 2 took place

less than 6 months after he moved in with her mother (a woman who also gave birth to one of Napier's sons). The time stamps on the videos indicate his abuse of Victim 2 took place at all hours of the day and night. Napier did not discriminate in the time he subjected Victim 2 to his abuse, sometimes fondling her genitals, forcing her to perform oral sex on him, asking her if she loved him, and, ultimately, raping her.

As for Napier's other characteristics, they clearly support the argument that he is completely unworthy of any type of lenient consideration. Napier began committing felony offenses at the age of 19. Since that time, he has been convicted of 19 offenses, including drug abuse, soliciting prostitution, disorderly conduct, receipt of stolen property, obstructing official business, having weapons while under disability, and nonsupport of dependents (among others). PSR ¶¶ 72-86.

The United States acknowledges that Napier claims to be the victim of sexual abuse. According to what he told the probation office, an "older" cousin abused him between the ages of five to ten. According to Napier, he never received counseling as a result of the abuse, nor did he disclose it to any adult. If true, the events of Napier's childhood sex abuse are tragic. However, these events do not grant Napier the right to subject at least two small children to repeated sexual abuse at his hands. Furthermore, Napier has managed to live an otherwise "normal" life. He is the father of multiple children. He has been able to maintain lengthy relationships with several women. He has been employed.

**C.   The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, protect the public, and provide the defendant with needed educational, medical, and correctional treatment.**

In order to adequately address the seriousness of Napier's offenses, the United States

requests this Court impose the maximum statutory penalty. To impose a lesser sentence would be contrary to the current directives of Congress and the current recommendations of the Sentencing Commission. The actions of Napier are despicable and must be punished swiftly and firmly in order to promote respect for the law and provide just punishment. Napier evaded punishment for his crimes for several years following his rape of Victim 1. He should not escape it a day longer.

As set forth herein, Napier's conduct is especially reprehensible and there is nothing about his personal characteristics or history which suggests any type of variance should be considered. Napier took an extraordinary risk in how he subjected Victim 1 and Victim 2 to abuse. Victim 1 was entrusted to Napier for only a brief amount of time, during the early morning hours while her aunt was working. During this brief time, Napier used the infant as a sexual toy. He abused Victim 2 at all hours of the day; sometimes when her mother and siblings slept and sometimes when her siblings were simply in another room during the day. He was entrusted to care for these children, not sexually assault them. The trust he broke and the unthinkable conduct he committed cannot justify any sort of downward variance. To vary downward would promote a *lack* of respect for the law and would diminish the seriousness of his offenses.

The United States is unsure whether *any* sentence would be "just punishment" under the circumstances. To begin, Victim 1: she was just a baby when Napier undressed her, placed his penis in her tiny mouth, attempted to penetrate her, and eventually ejaculated on her bottom. She will, mercifully, never know the abuse she suffered. She will simply have no memory of it. But, there remains the possibility that one day, an unknown person will contact her to let her know that, once again, the video and images of the sex abuse she does not remember has been found on another person's computer. The evidence of her abuse will live on forever. Napier made sure of

that. Currently, the damage to her parents and family, is far more heart wrenching. They know the abuse she suffered even if she does not.

Victim 2: this Honorable Court has met this child. She testified at trial. She demonstrated courage beyond her tender years when she recounted the abuse Napier subjected her to. The United States respectfully requests the Court recall the testimony of the child's therapist when considering what is "just punishment" for Napier as it relates to the crimes committed against Victim 2. She continues to suffer from physical symptoms as a result of the abuse. There are simply no words which would adequately capture the adverse impact Napiers' repeated sexual assault had on this little girl. He robbed her of her childhood and her innocence. Accordingly, given the extreme and extraordinary seriousness of this offense, §3553(a)(2)(A) indicates that a very severe sentence is warranted.

**D.    To afford adequate deterrence to criminal conduct and protection of the public from further crimes of the defendant.**

The sentence in this case must constitute a loud message to other offenders that the most extreme consequences will result for such callous disregard of young victims. Given Napier's overall conduct, which includes deviant sexual behavior against at least two young children, a guidelines sentence is wholly appropriate. His actions clearly support that he is a danger to the community. Napier has harmed countless children (in both producing his own child pornography and in searching for and distributing other child pornography) and poses a future danger to children. A long term of imprisonment, such as one that guarantees that he will remain incarcerated for the duration of his life, would satisfy all of the sentencing goals.

Likewise, the sentence should afford adequate general deterrence. This would be true even if Napier had not personally violated children. Congress, the Supreme Court, and the

Sentencing Commission have made it abundantly clear that general deterrence is a very important factor when considering an appropriate sentence.  *See, United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010)(citing *United States v. Ferber*, 458 U.S. 747, 760 (1982)("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography' by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.")  The Sixth Circuit has also spoken to the issue of general deterrence stating that "general deterrence is crucial in the child pornography context."  *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012).

Given the abundant evidence presented to the jury against Napier, there can be little doubt that the public (especially children) need to be protected from his further crimes.  Napier abused Victim 2 while her small siblings and mother were in the home.  While they slept peacefully, she was being sexually assaulted by Napier.  While they played in another room, she was forced to perform oral sex on him.  While they may move on from Napier's crimes because they were not personally harmed, she will never escape them.  She, and other little girls like her, deserve all the protection from Napier this Court can give.  The only effective way to deter similar conduct and protect the public is to permanently remove Napier from society.

### E.     The need to avoid unwarranted disparities.

Many child pornography producers have received Guideline and/or lengthy sentences which have been affirmed on appeal.  The Guidelines understandably contemplate long advisory sentences for people like Napier because they have directly harmed children – and because of the prescribed goals of sentencing.  A Guideline sentence, as constrained, of course, by the statutory maximum sentence in this case, would be a reasonable sentence and would reflect the seriousness

of Napier's offenses, promote respect for the law, deter future conduct, and provide the public with protection from future crimes and would adequately reflect all other sentencing factors.

While each case has unique factors, some aggravating and some mitigating, in this case, Napier's offenses are aggravated and worthy of severe punishment in accordance with many of the examples above. It is difficult to quantify, much less fathom, the harm and tragedy perpetrated on Victim 1 and Victim 2 (not to mention their families) by Napier. It is simply impossible to predict its long-term effect on the children or their loved ones. Napier's callous and selfish disregard for the life and health of his victims cannot be understated in this case. Napier supplemented these horrific acts by downloading and collecting many graphic images and videos of other very young children being raped and abused. Accordingly, the United States respectfully requests that, after considering the facts and circumstances of this case, the relevant guidelines, and the factors set forth in 18 U.S.C. §3553(a), this Court sentence Napier in accordance with the Guidelines (and lifetime supervision should he be released from prison at some point).

## IV. THERE IS NO COMPELLING REASON TO DEVIATE DOWNWARD FROM THE ADVISORY GUIDELINES

There is no compelling justification for departing downward from the advisory guideline range. The Sentencing Guidelines and the United States Code discourage downward departures for offenses involving minor victims. *See Chapter 5, Part K of the Guidelines Manual and 18 U.S.C. § 3553(b)(2)(A)(ii).* The commentary to U.S.S.G. § 5J2.0 explains that the standard for a *downward* departure in child crimes and sexual offense differs from the standard for other departures. The policy statement includes a requirement "that any mitigating circumstances that form the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure." *See Commentary to § 5K2.0, Scope of Policy Statement*

*4(B)(1).*

While the United States acknowledges Napier suffers from some medical conditions, those conditions do not absolve him from the punishment which should be imposed. Further, the Bureau of Prisons is more than capable of providing treatment for Napier while incarcerated.

## CONCLUSION

For the reasons stated above, the United States respectfully recommends that the Court sentence Napier as stated above.

Respectfully submitted,

CARTER M. STEWART
United States Attorney

/s/*Christy L. Muncy*
CHRISTY L. MUNCY     (KY 88236)
BENJAMIN C. GLASSMAN (0077466)
Assistant United States Attorney
Attorney for Plaintiff
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
christy.muncy@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *United States' Sentencing Memorandum* was served, via ECF, upon counsel for defendant on this 22nd day of April, 2014.

/s/*Christy L. Muncy*
CHRISTY L. MUNCY    (KY 88236)
Assistant United States Attorney