```
 1                    UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION
                                - - -
 3
      UNITED STATES OF AMERICA,      :
 4                                   : CRIMINAL NO. 1:13-CR-16
                  Plaintiff,         :
 5        -vs-                       : Conference
                                     :
 6    JAMES NAPIER,                  : Thursday, December 19, 2013
                                     : 3:02 p.m.
 7                Defendant.         : Cincinnati, Ohio

 8                                - - -
                          TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE SUSAN J. DLOTT, CHIEF JUDGE
                                  - - -
10
      For the Plaintiff:   Christy L. Muncy, Esq.
11                         Benjamin C. Glassman, Esq.
                           Assistant United States Attorneys
12                         221 East Fourth Street, Suite 400
                           Cincinnati, Ohio  45202
13
      For the Defendant:   Richard W. Smith-Monahan, Esq.
14                         Assistant Federal Public Defender
                           Chiquita Center
15                         250 East Fifth Street, Suite 350
                           Cincinnati, Ohio  45202
16
                           Soumyajit Dutta, Esq.
17                         810 Sycamore Street, 2nd Floor
                           Cincinnati, Ohio  45202
18

19

20    Law Clerk:           Sarah Fairweather

21    Courtroom Deputy:    William Miller

22    Also Present:        Bethany Morgan

23    Court Reporter:      Julie A. Wolfer, RDR, CRR

24                                - - -

25
```

Proceedings recorded in stenotype.
Transcript produced using computer-aided transcription.

<u>PROCEEDINGS</u>

(In chambers at 3:02 p.m. Defendant not present.)

THE COURT: I think you all know Sarah Fairweather. I'm not sure you know Bethany Morgan.

MS. MORGAN: Hi.

THE COURT: Bethany is our IT person, and we thought she was probably the most important person to have here at the meeting. Since I just saw a presentation this morning, it was a good presentation put on by some Ohio peace officer, it was, like, a two-hour PowerPoint; and at one point about 15 minutes into the program his PowerPoint stopped, you know, and he had to reboot it. And I'm thinking to myself, what is this guy going to do, you know, if he can't pull it up.

MS. MUNCY: He's going to zoom right through the rest of it. Presentation over.

THE COURT: Okay. So we wanted to talk about the mechanics of what we're going to do at the trial. Why don't we start with Christy or Ben.

MS. MUNCY: Ben found the case law so we'll kind of double team it, but it seems as though we do have to have the two-way going into the room that the child is going to be in as well as in the courtroom. How that is going to work, I'm not entirely sure where she's --

THE COURT: Bethany, do you know where we're thinking of?

```
 1              MS. MORGAN:  You're thinking about just right
 2    behind --
 3              THE COURT:  The conference room, right, right next to
 4    the courtroom.
 5              MS. MORGAN:  Yes.
 6              MS. MUNCY:  Would that work?
 7              MS. MORGAN:  That will work just fine.
 8              MS. MUNCY:  The thing that I was thinking about this
 9    morning in talking about it is the communication that -- I'm
10    assuming that you would be crossing her, so I'll just make that
11    assumption, assume Richard is going to be doing that.  I know
12    that interpreters use those headsets to communicate with their
13    clients.  I don't know if that would work or if you needed to
14    just come out and talk to him in between.  But that was the
15    only other issue that I thought of.  And I didn't know how he
16    would want to handle that.
17              MR. SMITH-MONAHAN:  I'm open to however.  I would be
18    happy doing it by the headset method.  I would also be fine
19    with just having moments perhaps after direct, before cross;
20    and if I do cross, before I decide to complete cross, that I
21    could also come back in and consult.  So I could also come into
22    the courtroom, if you want to do it that way.  That's pretty
23    much what you do in court anyways.  I don't talk to my client
24    much while direct is going on until -- and then I usually break
25    before I conclude cross and come back and check with him again.
```

```
 1    So I could just walk from one room into the other, do that.
 2              THE COURT:  That might be the best because I know when
 3    they originally set my courtroom up, there's supposed to be
 4    some system that the court reporter and somebody else can hear,
 5    you know, can put on headphones and hear, but, frankly, we've
 6    never used it.
 7              MS. MORGAN:  And it would have to have, like,
 8    certain -- it has to have the red eye -- or the red infrared
 9    thing.  And so being --
10              THE COURT:  It won't work anyway.
11              MS. MORGAN:  Being in that separate room, it won't
12    work.
13              THE COURT:  Oh, good.  Well, we should have just asked
14    you.
15              MR. SMITH-MONAHAN:  And I think trying to wear
16    something, it would be hard if I'm listening to the witness and
17    so --
18              MS. MORGAN:  Right.
19              MR. SMITH-MONAHAN:  The only other thing would be a
20    phone, if we just had a phone line, you know, but I think it's
21    just --
22              THE COURT:  You know, I do have -- I have a phone on
23    the bench.
24              MS. MORGAN:  And there is a phone.
25              THE COURT:  In that room.  But I'm not sure how --
```

```
 1              MR. SMITH-MONAHAN:  We could just put it on hold and
 2   when I wanted to talk to him --
 3              THE COURT:  A long extension cord on my phone.  I
 4   don't know.
 5              MS. MORGAN:  I mean, the amount of cable you have in
 6   there is, I mean, it's pretty long anyway.  But if you
 7   wanted --
 8              THE COURT:  On the phone.
 9              MS. MORGAN:  If you wanted it to be longer, I mean, we
10   could work something out, if that's what we wanted to do.
11              MR. SMITH-MONAHAN:  I, frankly, think it's just as
12   easy to walk -- I know where that little room is -- just to
13   walk next door.  It will slow it down a little, but it's just
14   one witness.
15              THE COURT:  That's fine.
16              Are we going to do a dry run of this to make sure it's
17   working?
18              MS. MUNCY:  I think that would be a good idea.  We've
19   got a pretrial the 6th, I believe, and hopefully there won't be
20   much to talk about by then; so if we could do it that day after
21   we're done or before, and that way we can report --
22              THE COURT:  Does that work for you, Bethany?
23              MS. MORGAN:  It should.
24              THE COURT:  What time is our final pretrial?
25              COURTROOM DEPUTY:  I think 10:30.
```

```
 1                MS. MUNCY:  It's at 10:30.
 2                THE COURT:  When's the trial set?
 3                COURTROOM DEPUTY:  The 13th.
 4                MS. MUNCY:  The 13th.  The following Monday.
 5           So we could meet over here at maybe ten, and then that
 6   way we could report back to you on how it worked and how
 7   everything is going to be set up.
 8                THE COURT:  Okay.  Great.
 9           Bethany, did you want to do it at 10 o'clock, then?
10                COURTROOM DEPUTY:  We have a change of plea scheduled
11   for ten.  It was a final pretrial, and I converted that into a
12   change of plea.
13                THE COURT:  I can use somebody else's courtroom.  I
14   could use Barrett's or --
15                MS. MUNCY:  We can do it before then.
16                THE COURT:  No, no, no.  That's okay.  I can just use
17   another court.
18                COURTROOM DEPUTY:  We'll make that all work out.
19                THE COURT:  We'll figure that one out.
20                MS. MUNCY:  And I will probably bring her here that
21   day as well, bring the child in that day.
22                THE COURT:  Oh, to show her what it looks like.
23                MS. MUNCY:  To show her the room.
24                THE COURT:  Yes, that's fine.
25           You've got your victim witness person to take care of
```

```
 1   her, then, afterwards?
 2           MS. MUNCY:  Yeah.
 3           THE COURT:  Okay.
 4           MS. MUNCY:  I might ask her doctor to be here.
 5           THE COURT:  Okay.
 6           MS. MUNCY:  Just in case she needs to talk to her
 7   afterwards.
 8           Her mother will not be in there with her, so it's
 9   either going to be the victim advocate from FBI who she's
10   familiar with, she's met her before, or her therapist.  One or
11   the other.
12           THE COURT:  Okay.  Do you want me to talk to her at
13   all, just tell her, you know, appreciate what she's doing or
14   something like that?
15           MS. MUNCY:  The child?
16           THE COURT:  Yes.
17           MS. MUNCY:  Only if you wanted to, Judge.  I mean,
18   it's really if you wanted to.
19           THE COURT:  I just wondered if it would make her feel
20   more comfortable when we have the proceeding.
21           Where am -- well, I'm in the courtroom.  I'm in the
22   courtroom.  That's why.  Because I'm trying to think of how we
23   rule on the objections.
24           MS. MUNCY:  Because we can -- have to see if there
25   were an objection, he would raise it.  She's going to be told
```

```
 1   that if we talk about something, to wait until you're finished
 2   because we should be able to communicate at the same time.
 3            THE COURT:  And then do they see me on the camera
 4   or --
 5            MS. MORGAN:  We can set it up where --
 6            THE COURT:  You don't have to.
 7            MS. MORGAN:  Well, we can set it up where it can be
 8   just whoever is going to be at, like, the podium, or we can do
 9   it at -- or the Judge.  So there's presets on there, so all --
10   like, Bill can just go back and just switch between the two.
11            MR. SMITH-MONAHAN:  That was, I guess, one point to
12   come to.
13            THE COURT:  Who's going to -- nobody will be at the
14   podium, though; both counsel will be in the -- both counsel
15   will be in the conference room.
16            MR. SMITH-MONAHAN:  Right.
17            MS. MORGAN:  With her.
18            THE COURT:  With her.
19            MS. FAIRWEATHER:  So what you'll need is the whole
20   courtroom.
21            MR. SMITH-MONAHAN:  Well, the statute --
22            THE COURT:  You can't see the whole -- there is a
23   camera in the back and a camera in the front.  So you can
24   either get the bench or you can get counsel table and the --
25            MS. MORGAN:  And we can rearrange the --
```

```
 1              THE COURT:  She's not going to want to see counsel
 2   table, though, is she?
 3              MS. MORGAN:  She might want to just look at you and
 4   just --
 5              THE COURT:  Because the whole idea is so that she
 6   doesn't have to see the defendant.
 7              MR. SMITH-MONAHAN:  I think that that's a point and
 8   that's what the case that Ben has provided the citation to.  I
 9   believe under the statute, she's supposed to have a view of the
10   defendant's image in the courtroom.
11              THE COURT:  Oh, okay.
12              MR. SMITH-MONAHAN:  And she's supposed to be able to
13   hear your voice.
14              THE COURT:  Hear?
15              MR. SMITH-MONAHAN:  Your voice.
16              THE COURT:  My voice.
17              MS. MORGAN:  Which she will.
18              MR. SMITH-MONAHAN:  From the courtroom.
19              And I think that the case, the Ninth Circuit case, I
20   don't know if you got a chance to look at it, but it's United
21   States versus Etimani, E-T-I-M-A-N-I, suggested that the
22   television camera with the defendant's -- or the view of the
23   defendant's image needs to be in the room with the child, at
24   least identified to her that he's on image.  It doesn't have to
25   be plopped right in front of her, but it has to be somewhere
```

```
 1   where she can see it and she can choose to look at it if she
 2   wants to.  Correct?
 3              MS. MUNCY:  Yes.
 4              THE COURT:  Then the camera should be --
 5              MS. MORGAN:  Off to the side a little bit and just
 6   kind of --
 7              THE COURT:  You know the camera that -- the screen
 8   I've got behind the bench there.  That's probably the exact
 9   shot you want because it shows me, it shows me -- no; no, it
10   doesn't.
11              MS. FAIRWEATHER:  It's behind you, right.
12              THE COURT:  No, it shows -- I see counsel table and
13   the audience.  The only problem with it is that I don't think
14   it shows -- I don't think you can see where the defendant would
15   be sitting.  You could see the -- I can see the government's
16   table real well, but I can't see, assuming -- I'm assuming as I
17   sit on the bench, I'm assuming that because my jury box is on
18   the left, the government will be next to the jury box and
19   defense counsel and defendant will be on the other side, and I
20   think it's obstructed because I can't see -- I know when I look
21   at that camera, I can't see who the attorney for the government
22   who's usually on that side is.
23              MS. MORGAN:  Now, I can move --
24              THE COURT:  You could move the camera.  Okay.  Great.
25              MS. MORGAN:  So we can kind of play around with that a
```

```
 1   little bit.  We can look at that and be, you know, Friday or
 2   something before.
 3              MS. FAIRWEATHER:  Because the jury box won't need to
 4   be in that field of view.
 5              THE COURT:  Right.
 6              THE COURT REPORTER:  What about me?
 7              THE COURT:  Oh, good question.  Where --
 8              MS. FAIRWEATHER:  You stay in the courtroom, I would
 9   think.
10              MS. MUNCY:  Everything is heard.
11              THE COURT:  But I know what Julie is going to say:
12   What if I don't hear, what if I don't hear it; how do I get
13   them to repeat it?  I guess you say something.  I know Julie.
14   I guess you say something and then I can tell counsel, "I'm
15   sorry, can you repeat that," or something.
16              MS. MUNCY:  I'll make sure before we start, before I
17   start asking her questions that you can hear and I'll do a
18   check just to make sure; and then I'll wait to hear the signal
19   from you that you can definitely hear me.
20              She's a little -- she's going to be a little
21   soft-spoken.
22              THE COURT:  I was going to say, is she soft-spoken?
23              MS. MUNCY:  She's kind of soft-spoken, but I'll --
24   we'll work on that with microphones, if we can.
25              THE COURT:  You know what, would you be better off --
```

```
 1   she'd be much better off in the room with you all because, you
 2   know, I think -- I don't think it's going to bother the witness
 3   too much, and she likes to look at people's mouths when they
 4   answer questions.  And, you know, especially if the child is
 5   soft-spoken so there is a minimum amount of, you know, "would
 6   you repeat," that kind of thing.
 7            MS. MUNCY:  Okay.
 8            THE COURT:  Yes, I know Julie likes to be in the room
 9   with the witnesses.
10            MS. MUNCY:  I don't think that's going to bother her.
11            MR. SMITH-MONAHAN:  That would be fine.
12            THE COURT:  Yes, that will be better for you because
13   the only thing you'll be hearing from the courtroom, then, are
14   just my rulings.
15            Okay.  What else?
16            MS. MUNCY:  I think that's it.
17            THE COURT:  That's it.  Okay.
18            MR. SMITH-MONAHAN:  So we'll test run on the 6th.
19            THE COURT:  Off the record.
20       (Off-the-record discussion.)
21            THE COURT:  Okay.  In further discussion, it was
22   mentioned that the courtroom would have to be closed for the
23   testimony of Victim Number Two or what are you calling her?
24            MS. MUNCY:  Victim Number Two.
25            THE COURT:  Victim Number Two because she is a minor.
```

```
 1   Mr. Smith-Monahan read from -- what rule is that?
 2              MR. SMITH-MONAHAN:  18 U.S.C. Section 3509(b).  It's
 3   just (b).  It's the section that deals with alternatives to
 4   live testimony.  And it says -- do you want me to read that
 5   sentence of --
 6              THE COURT:  Yes.
 7              MR. SMITH-MONAHAN:  "The child's testimony shall be
 8   transmitted by closed-circuit television into the courtroom for
 9   viewing and hearing by the defendant, jury, judge, and public."
10              THE COURT:  And Mr. Glassman commented that the
11   government's going to do a little more research on what that
12   clause, "the public," means.
13              Okay.  What do I know we're not thinking of?
14              COURTROOM DEPUTY:  It's a good thing we're doing a
15   test run on it on the 6th.
16              THE COURT:  Okay.
17              MS. MORGAN:  Will you have her here beforehand so she
18   can see it?
19              MS. MUNCY:  Yes.  She'll be here that morning.  I'll
20   have her here that morning before school starts.
21              MS. MORGAN:  I can go down, if you want me to --
22              THE COURT:  If you want to set up early.
23              MS. MORGAN:  So that she can see the room and kind of
24   feel it out and stuff.
25              THE COURT:  And you'll, Bill, you'll -- we'll
```

```
 1   figure -- you'll figure out where they're going to -- where the
 2   screen goes, where they're going.  We just need to get the
 3   logistics in the room so that counsel can see, the witness and
 4   everybody can see the video, the TV, and everybody can hear.
 5           Okay.  What would they have done in the old days
 6   before two-way communication?
 7           MR. SMITH-MONAHAN:  It would be a deposition
 8   beforehand.
 9           MS. MUNCY:  Could be, a deposition.
10           THE COURT:  Okay.  All right.  Thank you, everybody.
11           MR. SMITH-MONAHAN:  Thank you, Judge.
12           THE COURT:  If I don't see all of you, happy holidays,
13   Merry Christmas.
14       (Proceedings concluded at 3:39 p.m.)
15                              - - -
16
17                       C E R T I F I C A T E
18       I, Julie A. Wolfer, the undersigned, do hereby
19   certify that the foregoing is a correct transcript from the
20   record of the proceedings in the above-entitled matter.
21                              s/Julie A. Wolfer
                                Julie A. Wolfer, RDR, CRR
22                              Official Reporter
23
24
25
```